Arthur P. MARTINI, Karen Martini, William Rich, Maria Rich, Ray Kilmer, Judy Kilmer, Ann Wallis, Richard Bowman, Mary Bowman, and Pioneer Lookout Water District, a Colorado Special District, Plaintiffs–Appellees,

v.

Ray SMITH, Defendant–Appellant.

No. 99CA0714.

Colorado Court of Appeals,
Div. IV.

June 8, 2000.

Rehearing Denied July 27, 2000.

Certiorari Granted March 12, 2001.

Hanes & Schutz, P.C., Richard W. Hanes, Timothy J. Schutz, Colorado Springs, Colorado, for Plaintiffs–Appellees.

Winston & Winston, P.C., Joseph R. Winston, Haydn Winston Colorado Springs, Colorado, for Defendant–Appellant.

Opinion by Judge VOGT.

In this action to resolve conflicting claims to ownership of real property, defendant, Ray Smith, appeals the summary judgment entered in favor of plaintiffs, Arthur P. Martini, Karen Martini, William Rich, Maria Rich, Ray Kilmer, Judy Kilmer, Ann Wallis, Richard Bowman, Mary Bowman, and Pioneer Lookout Water District. We reverse and remand for further proceedings.

The property in question is a twenty-five foot wide strip of land along the southern edge of the Pioneer Lookout Subdivision (the Subdivision) in El Paso County, Colorado. On the original Subdivision plat, the strip was designated as Simpson Road (the Road) and was dedicated to public use. The Town of Palmer Lake accepted the plat in 1955, but never improved or maintained the Road. In 1964, Palmer Lake enacted and recorded an ordinance stating that all property shown on the Subdivision plat was "detached and disconnected" from Palmer Lake.

Plaintiffs own parcels of property in the Subdivision that abut the northern boundary of the Road. Defendant owns property south and west of the Subdivision, adjacent to the Road.

In 1998, defendant began running a road grader across the Road and refused plaintiffs' demands that he cease such activity. Plaintiffs then filed a complaint against defendant and El Paso County, seeking a judicial determination that they owned the Road by virtue of the vacation and abandonment of the Road, or, alternatively, through adverse possession. They also asserted claims for trespass and injunctive relief against defendant.

In accordance with C.R.C.P. 105(c), El Paso County filed a disclaimer of all right, title, and interest in the Road. Defendant counterclaimed, asserting that he owned one-half of the Road under Colorado's vacation statutes, § 43–2–301, et seq., C.R.S.1999, or, alternatively, that he had acquired rights in the Road by adverse possession.

The parties filed cross-motions for summary judgment on their claims to ownership of the Road. The trial court granted plaintiffs' motion, finding that the Road had been vacated and "ceased existence as a public road" when Palmer Lake deannexed the Subdivision in 1964, and that plaintiffs, not defendant, owned the Road as a result. It also found that defendant did not own the Road by adverse possession. The court certified its judgment as final pursuant to C.R.C.P. 54(b) and stayed further proceedings pending resolution of defendant's appeal.

We review a summary judgment de novo, applying the same standards that govern the trial court's determination. Summary judgment is appropriate when the pleadings, affidavits, depositions, or admissions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. All doubts as to the existence of a triable factual issue must be resolved against the moving party, and the non-moving party is entitled to the benefit of all favorable inferences that may be drawn from the facts. Churchey v. Adolph Coors Co., 759 P.2d 1336 (Colo.1988); Wallman v. Kelley, 976 P.2d 330 (Colo.App. 1998).

I.

Defendant argues that the trial court erred in finding that the Road was vacated and ceased existence as a public road when

Palmer Lake enacted the ordinance deannexing the Subdivision in 1964. We agree.

■ In construing an ordinance, a court should consider the enactment as a whole in order to give consistent, harmonious, and sensible effect to all its parts. Because the interpretation of an ordinance is a question of law, the trial court's determination is subject to *de novo* review. *Wells v. Lodge Properties, Inc.,* 976 P.2d 321 (Colo.App.1998).

■ When Palmer Lake accepted the Subdivision plat, on which the streets were dedicated to public use, it obtained fee title to the streets, holding them in trust for the public. *See* § 31–23–107, C.R.S.1999 ("All streets . . . designated . . . as for public use on the map or plat of any city or town or of any addition made to such city or town are public property and the fee title thereto vested in such city or town"); *Olin v. Denver & Rio Grande Railroad Co.,* 25 Colo. 177, 53 P. 454 (1898); *Buell v. Sears, Roebuck & Co.,* 205 F.Supp. 865 (D.Colo.1962) (fee title to streets held by city was a limited one, in trust for abutting owners and users of street, but was nevertheless sufficient to allow disposition in accordance with Colorado vacation statutes), *aff'd,* 321 F.2d 468 (10th Cir.1963).

■ Cities and towns may vacate public roadways within their limits that have been dedicated for public use. *See City of Colorado Springs v. Crumb,* 148 Colo. 32, 364 P.2d 1053 (1961) (municipality has broad powers to vacate streets or roadways within its boundaries, subject only to limitations of constitution and authority delegated to municipality by statute). Section 43–2–303(1)(a), C.R.S.1999, states that a town "by ordinance may vacate any roadway or part thereof located within the corporate limits of said . . . town."

■ Absent effective vacation, the roadways remain dedicated to the public. *See Uhl v. McEndaffer,* 123 Colo. 69, 225 P.2d 839 (1950).

The 1964 Palmer Lake ordinance states that "ALL of that tract or territory . . . described and shown in the plat of Pioneer Lookout Subdivision . . . is (each parcel thereof) hereby detached and disconnected from the said Town of Palmer Lake, Colorado." (Emphasis in original.)

While the ordinance clearly demonstrates Palmer Lake's intent to deannex the Subdivision, we agree with defendant that its language was insufficient to effect a vacation of the streets within the Subdivision.

■ Although § 43–2–303(1)(a) does not prescribe any specific language to be used in an ordinance vacating roadways, we conclude that the ordinance must, at a minimum, sufficiently identify the affected roadways to put a person searching county records on notice that they have been vacated. The deannexation ordinance here does not do so.

■ Plaintiffs point out that the ordinance was recorded and that § 43–2–303(4), C.R.S. 1999, provides that "any written instrument of vacation . . . purporting to vacate or relocate roadways" that has been of record for seven years is prima facie evidence of an effective vacation of such roadways. However, because the ordinance at issue here does not amount to a "written instrument of vacation," plaintiffs may not rely on § 43–2–303(4) as establishing that the ordinance vacated the Road.

In sum, we conclude that an ordinance which, as here, simply purports to deannex a subdivision does not without more effect a vacation of public roadways within the subdivision, and that the trial court erred in ruling otherwise.

## II.

Having concluded that the ordinance did not vacate the Road, we next consider plaintiffs' alternative contention that the ordinance and the subsequent actions of Palmer Lake and El Paso County, considered together, demonstrate that the Road was abandoned. We conclude that the cause must be remanded to permit the trial court to address this issue.

■ When the Subdivision was deannexed, control over any public roads in it passed to El Paso County. *See* 2A *McQuillin Municipal Corporations* § 7.46.70, at 67 (3d ed. 1996)("On change of municipal limits the control over highways passes by virtue of

law from one political subdivision of the state to the other accordingly as the highways are in the one or the other"). Thus, Palmer Lake no longer had the responsibility for maintaining the Road after 1964, and its failure to do so cannot be considered evidence of abandonment, as plaintiffs contend.

The question then becomes whether the county, to which control over the Road passed in 1964, has since abandoned the Road. Plaintiffs point out that, unlike other streets in the Subdivision, the Road has never been accepted, improved, or maintained by the county, and that, in this action, the county filed an express disclaimer of any interest in the Road. However, these facts are not enough, without more, to establish that the Road is no longer a public road because it has been abandoned.

Section 43–2–303(2)(b), C.R.S.1999, provides in pertinent part: "If any roadway has been established as a county road at any time, such roadway shall not be vacated by any method other than a resolution approved by the board of county commissioners of the county...." However, § 43–2–303(2)(b) does not apply "to any roadway that has been established but has not been used as a roadway after such establishment." Section 43–2–303(2)(e), C.R.S.1999.

In *Uhl v. McEndaffer, supra,* the supreme court rejected a contention that a strip of land that had been dedicated as a public highway but never improved by the county could be deemed abandoned by nonuse. While the court declined to hold "that a dedicated highway cannot in time be abandoned on account of nonuse," it cautioned that abandonment would "not ordinarily be implied from mere nonuser when the public need has not required the use." *Uhl v. McEndaffer, supra,* 123 Colo. at 76, 225 P.2d at 843.

Some years later, in *Koenig v. Gaines,* 165 Colo. 371, 440 P.2d 155 (1968), the supreme court cited the above-quoted language from *Uhl* but went on to hold that nonuse of a former road for 30 years, plus the construction of an alternate road, was sufficient to support a finding of abandonment.

In *Raftopoulos v. Farrow,* 691 P.2d 1160 (Colo.App.1984), a division of this court declined to infer abandonment of a public right-of-way, even though the right-of-way had never been used as a road and was not included on the official county highway users map, and even though a commissioner had told one of the parties that the county had no interest in the unused portion. The division concluded that, even if it assumed that there could be abandonment of a dedicated public right-of-way other than by official board action, the facts of the case did not establish abandonment under *Uhl v. McEndaffer, supra.*

Under *Uhl* and *Raftopoulos,* the facts relied on by plaintiffs on appeal—namely, that the county has not improved the Road and that it filed a disclaimer in this action—do not allow us to conclude as a matter of law that the county has abandoned the Road.

Assuming the Road was never established and used as a county road and thus is not subject to the requirements of § 43–2–303(2)(b), additional evidence bearing on the issue may suffice to establish abandonment under *Koenig v. Gaines, supra.* However, the trial court did not reach the abandonment issue because it determined that the Road had been vacated in 1964.

Having concluded that summary judgment on that basis must be reversed, we remand the cause for further proceedings, which may include the presentation of such additional evidence or argument as the court in its discretion deems necessary, to determine whether abandonment has been established and, if so, whether plaintiffs now hold title to the Road.

III.

For guidance on remand, we also address defendant's contention that the trial court erred in entering summary judgment on his counterclaim asserting ownership of the Road under a theory of adverse possession.

We note at the outset that, if it is determined that the Road was not abandoned but, instead, remains a public roadway, neither plaintiffs nor defendant can claim ownership of the Road by adverse possession.

*See Palmer Ranch, Ltd. v. Suwansawasdi,* 920 P.2d 870 (Colo.App.1996); *City of Canon City v. Cingoranelli,* 740 P.2d 546 (Colo.App.1987)(individual had no adverse possession claim to strip of land acquired by city through acceptance of dedication); § 38-41-101(2), C.R.S.1999.

■ If, on the other hand, the Road was abandoned, title reverted to the parties who, at the time of abandonment, owned the land through which the Road ran. *See Williams v. Town of Estes Park,* 43 Colo.App. 265, 608 P.2d 810 (1979); § 43-2-113, C.R.S.1999.

To the extent it is determined that the Road was abandoned at a date early enough to permit the establishment of ownership rights by adverse possession, we agree with the trial court that defendant did not raise any issues of fact sufficient to withstand entry of summary judgment for plaintiffs on his adverse possession counterclaim.

### A.

■ To acquire title to land by adverse possession, claimants must prove that they possessed the disputed parcel for the statutory period of eighteen years and that this possession was hostile, adverse, actual, under a claim of right, exclusive, and uninterrupted. *Palmer Ranch, Ltd. v. Suwansawasdi, supra.*

■ In support of his summary judgment motion, defendant submitted an affidavit stating that he had used the Road sporadically between 1975 and 1998 to access his property. He also claimed to have graded the Road on three occasions during that period. His only averment of any activity on the Road between 1985 and 1994 was a statement that he had graded the Road in 1991 or 1992.

We conclude, as did the trial court, that these allegations were insufficient as a matter of law to establish a right to ownership by adverse possession. Defendant's affidavit does not afford a basis for concluding that his use of the Road was either exclusive or uninterrupted for eighteen years. *See Palmer Ranch, Ltd. v. Suwansawasdi, supra.*

### B.

■ Nor do we agree with defendant that his affidavit sufficiently raised an issue of material fact as to whether he had rights in the Road under a theory of prescriptive easement.

■ A party who claims a prescriptive easement must prove by a preponderance of the evidence continuous, open, and adverse use of the easement for eighteen years. *Proper v. Greager,* 827 P.2d 591 (Colo.App. 1992).

■ As defendant points out, to establish the "continuous" use requirement for a prescriptive easement, it is not necessary that a person be in continuous possession in the sense that he or she physically possesses the land every moment of every day. *Rivera v. Queree,* 145 Colo. 146, 358 P.2d 40 (1960). Here, however, defendant claimed in his affidavit to have used the Road only once during the nine-year period between 1985 and 1994. We conclude that, even under the less stringent definition of "continuous" applicable to prescriptive easement claims, defendant's affidavit was not sufficient to support a finding of a prescriptive easement.

### C.

■ We similarly reject defendant's contention that his affidavit raised a question of fact as to whether the Road had become a public road pursuant to § 43-2-201(1)(c), C.R.S.1999, which designates as a public highway "all roads over private lands that have been used adversely without interruption or objection on the part of the owners of such lands for twenty consecutive years."

Even assuming defendant raised this issue in the trial court sufficiently to preserve it for appeal, we again conclude that his affidavit did not raise a disputed issue of fact in this regard. There is no allegation in the affidavit of public use for twenty consecutive years, as required by the statute. *See Williams v. Town of Estes Park, supra* (public use that is only intermittent and not continuous does not meet the requirements of § 43-2-201(1)(c)).

In sum, because defendant's adverse possession counterclaim failed as a matter of law under the undisputed facts, the trial court properly entered summary judgment in favor of plaintiffs on that counterclaim.

The judgment is reversed, and the cause is remanded for further proceedings consistent with the views expressed here.

Judge MARQUEZ and Judge ROY concur.